**WILLBANKS et al. v. MONTGOMERY.**

No. 14712.

Court of Civil Appeals of Texas.
Fort Worth.

July 13, 1945.

Rehearing Denied Sept. 14, 1945.

Arch Dawson, of Wichita Falls, for appellants.

John P. Marrs, of Wichita Falls, W. T. Powell, of Walters, Okl., and Carrigan, Hoffman & Carrigan, of Wichita Falls, for appellee.

SPEER, Justice.

This is an appeal from a judgment granting a temporary injunction against plaintiffs in cause No. 38,785—A, in a District Court of Wichita County, Texas, and the sheriff of that county enjoining them from making a sale of real estate levied upon by the sheriff to satisfy a judgment in favor of the plaintiffs against the defendant (appellee here).

Addie Dollar Bell, testatrix, died in March, 1943. In 1933 she had made a will

wholly in her own handwriting by which she bequeathed all her property to Baldwin Montgomery and named him independent executor; later, in 1940 she executed a deed to Baldwin Montgomery to a certain lot in Wichita Falls and in 1941 transferred certain vendor's lien notes to Montgomery. After the death of Mrs. Bell, Mrs. Ida Willbanks and others alleged to be her heirs, filed a suit in District Court to cancel the deed and transfer of the note lien to Montgomery, and sought to recover certain funds belonging to Mrs. Bell which Montgomery had appropriated to his own use.

In due time after Mrs. Bell's death, Montgomery filed and offered for probate the will of Mrs. Bell executed in 1933. Mrs. Willbanks and all other heirs contested the probate on the grounds of lack of testamentary capacity. The court admitted the will to probate and contestants appealed to the District Court. Contestants being the same persons who had previously filed a suit to cancel the deed and transfer of vendor's lien and to recover for funds used by Montgomery, the trial court consolidated that suit with the will contest. A jury trial in District Court resulted in a denial of the probate of the 1933 will but found that Mrs. Bell had mental capacity to convey her property to Montgomery in 1940 and 1941. That Montgomery, since the death of Mrs. Bell, had appropriated to his own use $1213.75 out of the funds belonging to the estate of Mrs. Bell. Judgment was entered on December 16, 1944, refusing probate of the 1933 will, denying to contestants the cancellation of the deed and transfer of a vendor's lien by Mrs. Bell to Montgomery but gave contestants (they being also plaintiffs in the District Court cause consolidated with the will contest) judgment against Montgomery for $1213.75 on the accounting. Montgomery gave notice of appeal to this court but did not perfect his appeal and upon application of contestants we affirmed that judgment on certificate by order entered May 4, 1945. All costs were paid and the mandate was promptly issued to the trial court.

Execution was issued on the judgment above referred to and placed in the hands of the sheriff, who thereafter levied upon the lot and property which had been conveyed by Mrs. Bell to Montgomery.

During the time transcript and statement of facts were being prepared for the appeal by Montgomery in the consolidated suit, on April 1, 1945, Montgomery, who had previously taken charge of all property belonging to testatrix, discovered among old papers a purported holographic will executed by Mrs. Bell, which reads: "This is March 18, 1942, and this is my will. I want Baldwin Montgomery to have everything that I have for he has taken care of me. I Addie D. Bell. Mrs. W. P. Bell."

On May 8, 1945, Montgomery filed the newly discovered will for probate. This application was also contested by Mrs. Ida Willbanks and others, the same persons who successfully contested the will of 1933. The contest was denied and the will was probated May 24, 1945. Montgomery was appointed administrator of the estate with will annexed, and he duly qualified as such.

On June 2, 1945, Montgomery filed a petition in the consolidated suit for temporary injunction against Mrs. Ida Willbanks and all other contestants and plaintiffs in the consolidated suit and the sheriff of Wichita County seeking to restrain sale under the execution. In the application for injunction Montgomery alleged that under the will of Mrs. Bell, executed in 1942 and duly probated, he was the sole beneficiary and entitled to all of the property owned by her at her death. That the said will of 1942 when so probated "superseded and annuls all of the proceedings and the judgment rendered in the consolidated cause aforesaid, insofar as the portion of said judgment affects the accounting between the parties and the order providing for the money judgment against Baldwin Montgomery, and all of the personal property of the said Addie Dollar Bell affected by said judgment in said consolidated cause." That unless the equitable injunction of the court be issued his right to the title and possession of the property will be seriously prejudiced. That if sale be made by the sheriff under said execution the will of said Addie Dollar Bell will be rendered ineffective and a cloud will be cast upon the title to his said property. He prayed for the temporary injunction and that on final trial it be made permanent.

Mrs. Willbanks and the other respondents answered by general denial and specially that Montgomery knew or should have known of the existence of the will of 1942 long prior to the time he now claims to have first discovered it and in sufficient time to have protected his rights, if any he had thereunder, prior to the date of the judgment in the consolidated cause;

and to have his rights adjudicated in that suit. They prayed that Montgomery's petition be dismissed and that no injunction whatever be granted.

The trial court ordered the temporary injunction and found that unless issued, "Immediate and irreparable loss or damage will result to the defendant, Baldwin Montgomery" and if not so issued plaintiffs will proceed to sell under execution the property of the petitioner (Montgomery) which was bequeathed to him under the last will of Addie Dollar Bell, deceased. The temporary injunction was made effective until the further orders of the court. Bond was required of Montgomery and he complied with the order. Respondents excepted, gave notice of and have perfected this appeal.

Points relied upon by respondents are in substance, that: (1) The former judgment between the same parties (except the sheriff) having fully adjudicated the title owned by testatrix and given to respondents certain personal property and a money judgment for funds belonging to the estate used by relator (Montgomery), the subsequent probating of the will of 1942 devising all of the estate to relator did not supersede and annul the former judgment and hence did not furnish any ground for injunctive relief against the enforcement of the judgment; (2) there being no allegations in relator's petition for injunction that the former judgment was void nor even voidable and no attempt made to set it aside, this attack thereon is collateral and the writ of injunction was unwarranted. Points 3 and 4 go to the lack of diligence of Montgomery in discovering the will of 1942. We shall later refer to this contention.

We must bear in mind that this is an action in equity—one to prevent a sale by the sheriff of property to satisfy a judgment which relator asserts has been superseded by the probate of a will which gave to him the property for which respondents procured a judgment against him and out of which came respondents' judgment for money, which under the terms of the probated will of Mrs. Bell, relator acquired title to. We are not here trying the rights of the litigants to the property, but only that all property be held in status quo until property rights may be finally determined, obviously at some contemplated future trial. The respondents pleaded that the judgment probating the 1942 will was not final. We have no means of knowing whether appeal was perfected from that judgment but certainly it remains subject to certiorari by the District Court, and even further appeals from any judgment that may be entered in the District Court. If appeal is taken in any form from that judgment it may be assumed that relator will resist it and have ample opportunity for amendments in which his rights may be more definitely stated, in the identical court which awarded to respondents the judgment upon which they rely.

Relator alleged as grounds for his equitable relief that the 1942 will which bequeathed to him all of Mrs. Bell's property had been admitted to probate and that he had qualified as administrator with will annexed, and that the judgment of probate superseded and annuls the proceedings and judgment under which respondents claim. Respondents contend that since no effort was made to have their judgment set aside the injunctive relief sought by relator is unwarranted.

Relator's petition is not all that could have been desired under the circumstances, but his allegations are such as to mean that the probating of the 1942 will had the effect to set aside the former judgment. Webster's International Dictionary, among other things, gives as the definition of "supersede": "To replace or set aside and put another in the place of; To supplant; To make void, useless or unnecessary by superior power, or by coming in the place of."

Under Rule 94, Texas Rules of Civil Procedure, it may also be doubted if respondents' abbreviated pleadings present the affirmative defenses to relator's petition, with respect to res adjudicata and estoppel. Yet, if the judgment probating the 1942 will is not final, more and perhaps amended pleadings will follow when the matter is tried out on its merits.

■ Irrespective of the effect of relator's pleadings in this District Court case, we find it unnecessary to determine whether the admitting to probate in the County Court of the will of 1942 automatically "superseded" or set aside the judgment of respondents in the District Court. The property rights between the parties will eventually be controlled by the outcome of the probate of the last will of Mrs. Bell. We will not assume to predict at this time what steps will be taken by relator if the

present judgment of probate of the 1942 will becomes final, nor whether if that judgment is appealed from and otherwise determined what course should be pursued by the parties. Pending all these contingencies the trial court restrained respondents from enforcing their judgment in the manner proposed by them until the court shall order otherwise. We take this to mean that future contingencies may arise which would prompt the court to either set aside the former judgment or leave it in full force and effect and in the event of the latter, it may be enforced. It was not a necessary prerequisite to the relief sought by relator's petition for injunction that the judgment under which respondents claim, be first set aside or annulled. This for the reason the probate of the 1942 will may not be permitted to stand, in which event the previous judgment would be a proper disposition of the rights of the parties.

The old case of Vance v. Upson, 64 Tex. 266, while not necessarily controlling here sheds some light on the necessity of setting aside the former judgment in the consolidated suit prior to a final determination of whether the 1942 will and its provisions will control the rights of the parties. In that case a will executed in 1867 was admitted to probate and apparently the rights of interested parties fixed thereunder. A subsequent will was later discovered and offered for probate; a contest was instituted because of the former probate of the other purported last will. It was held that the probate of the other will by the same testator was no obstacle to the probating of the second or last one. It was also held that the judgment probating the first proposed will need not be set aside prior to judgment on the second; the court reasoned that it might ultimately be determined that the second proposed will, as such, could not be probated. In this connection the court said: "If the papers offered as the will of James Vance (referring to the last proposed will) revoked all former wills, then it would seem that their probate as his last will would incidentally have the effect of revoking the former probate, and, if so, the court might so declare whether there was any pleading asking for such relief or not."

There can be only one "last" will of a decedent, and if by mistake either of the court or the parties, an instrument is admitted to probate which in fact was not testator's last will, beneficiaries thereunder take nothing, unless some rule of equity precludes the probating of testator's last will and testament. The law will, if possible to do so, give sanction to the expressed desires of a competent testator as expressed in his testamentary instrument.

It is quite obvious in the instant case that if the will of 1933 had been probated on appeal to the District Court where it was consolidated with respondent's suit for property, no award would have been made to them in the judgment upon which they now rely.

Under provisions of Article 3314, R.C.S. the property of a deceased person then and there vests in some other person or persons; if he dies intestate, it vests in his heirs; if testate, it vests in his beneficiary or beneficiaries, subject, of course, to his debts and exemptions.

Injunctive relief is based upon principles of equity, and is not necessarily confined to being auxiliary to some other form of relief sought. Section 3, Article 4642 R.C.S. provides in effect that the writ may issue in instances in which the applicant shows himself entitled to it under the rules of equity. Section 2 of Article 4643 R.C.S. provides that a district judge in another district, under certain conditions, may issue the writ to stay execution or sales under deeds of trust, etc.

In the instant case, subsequent to the judgment of respondents upon which they rely, the county court has admitted the will of 1942 to probate, and if that order becomes final, respondents have no legal right to any of the property of Mrs. Bell, for as before pointed out, all of her property vested in the beneficiary Montgomery. We are not to be understood as holding that the probate court could in his judgment set aside and annul the former judgment of the District Court denying probate of the 1933 will and awarding a money judgment against relator. That question is not before us, and we do not decide it. If the probate judgment which respondents say is not final, and may yet be set aside on appeal, should take that turn, the District Court would have the authority under a proper showing to hold relator guilty of laches in not presenting that will for probate before judgment was entered in favor of respondents for property and on accounting. Just what course the parties will pursue, we do not know, nor are we con-

cerned about it in viewing the situation presented to the trial court.

The judgment ordering the issuance of the writ of injunction from which this appeal comes, did not attempt in so many words to set aside any former judgment awarded to respondents, but the issuance of the writ had the effect only to suspend the enforcement of that judgment until further orders of the court; such order leaves the matter open for further developments.

In their brief, respondents cite and rely largely upon the case of White v. White, 142 Tex. 499, 179 S.W.2d 503. We have carefully studied that opinion and believe it distinguishable from the case before us. The situation there narrated is a rather complicated one; the principles of equity were determined not to exist—that the action was not a Bill of Review. It involved two distinct suits to partition a tract of land between the same parties. The will had been probated before the first partition suit, and its effect relied upon by one side. The validity of the will was not contested prior to the first partition suit. Decree of partition was entered giving effect to the will. Later a contest of the will prevailed and contestants filed the second suit for partition upon the theory that additional interests in the land were acquired by them subsequent to the original partition. Court held them bound by the first judgment of partition, and that their second suit was a collateral attack on the first judgment. As we view this and that case the principal difference lies in the nature of the relief sought there and here. A complete analysis of the White case would unduly lengthen this discussion.

■■ Applicable to one of respondents' points of error, we do not construe the proceedings in this case to be a collateral attack on the judgment in the consolidated case in the district court out of which this writ of injunction issued. This injunction proceeding is between the same parties (except as to the sheriff who has no interest in either judgment) to the original judgment in favor of respondents; it is in the same court, growing out of the same case and under the same docket number. The general rule in this state is that an action to enjoin the enforcement of a judg-ment brought in the court where the judgment was rendered, is considered a direct and not a collateral attack. Citizens' Bank v. Brandau, Civ.App., 1 S.W.2d 466, error refused; Southern Surety Co. v. Texas Oil Clearing House et al., Tex.Com.App., 281 S.W. 1045; Reistino v. Chandler et al., Tex.Civ.App., 156 S.W.2d 1008, 1009, and cases cited. 25 Tex.Jur. 763, 764, Sec. 288, states that the authorities in Texas are not in harmony on the rule announced above by us, and cites many cases pro and con. However, in view of the nature of this proceeding, the contents of the petition and the literal meaning of the language used therein, we hold this to be a direct attack rather than a collateral one.

■ Respondents present two points contending that relator should not be granted the equitable relief of an injunction in this case for the reason he knew, or should have known, by the exercise of duty and reasonable diligence of the existence of the 1942 will when he attempted to have probated the will executed in 1933. They present very persuasive reasons, not without support in the record, in support of the contention. But the trial court heard the pleadings and the evidence offered by all parties, and the effect of the judgment entered is to acquit relator of negligence in this respect. There is evidence to support either theory but under such circumstances we are bound by the weight and construction given by the trier of the facts before him.

■ It is the general rule in this state that the granting or refusing to grant the writ of injunction is addressed largely to the sound discretion of the trial court, and that his judgment will not be disturbed unless a clear abuse of that discretion is shown. See Landwer v. Vuller et al., Tex. Civ.App., 187 S.W.2d 670, 674, and cases cited.

■ As we view this whole situation we see no abuse of discretion by the trial court; we have therefore concluded that his action in ordering the issuance of a temporary injunction against the sale of the property levied upon, to satisfy the judgment of respondents, was justified. The judgment should be affirmed, and it is so ordered.