ATTORNEY GENERAL OF TEXAS

GREG ABBOTT

November 24, 2009

Mr. Robert Scott
Commissioner of Education
Texas Education Agency
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0747

Re: Whether a school district may expend district funds to pay a civil penalty imposed by a municipality (RQ-0710-GA)

Dear Commissioner Scott:

On behalf of the College Station Independent School District (the "District"), you ask our opinion on "the constitutionality of expending [D]istrict funds to pay a civil fine" that is imposed upon the District pursuant to chapter 707 of the Texas Transportation Code.[1] The District contends that the expenditure of public funds to pay such a penalty would contravene article III, sections 51 and 52(a) of the Texas Constitution.[2]

Under chapter 707,

> [t]he governing body of a local authority by ordinance may implement a photographic traffic signal enforcement system and provide that the owner of a motor vehicle is liable to the local authority for a civil penalty if, while facing only a steady red signal displayed by an electrically operated traffic-control signal located in the local authority, the vehicle is operated in violation of the instructions of that traffic-control signal . . . .

TEX. TRANSP. CODE ANN. § 707.002 (Vernon Supp. 2009). For purposes of chapter 707, "'[o]wner of a motor vehicle' means the owner of a motor vehicle as shown on the motor vehicle registration records of the Texas Department of Motor Vehicles or the analogous department or agency of another state or country." *Id.* § 707.001(2). "It is presumed that the owner of the motor vehicle committed the violation . . . if the motor vehicle depicted in a photograph or digital image taken by a photographic traffic signal enforcement system belongs to the owner of the motor vehicle." *Id.*

---

[1]Request Letter (*available at* http://www.texasattorneygeneral.gov).

[2]Letter from Ms. Chris G. Elizalde, Walsh, Anderson, Brown, Schulze & Aldridge, P.C., on behalf of the District, to Mr. Robert Scott at 1–2 (Apr. 15, 2008) (attached to Request Letter) [hereinafter District Letter].

§ 707.013(a). Therefore, under chapter 707, the owner of a motor vehicle that was operated in violation of the instructions of that traffic-control signal may be held liable for that violation even if the owner was not operating the motor vehicle at the time of the violation. However, a local ordinance adopted pursuant to chapter 707 must allow a motor vehicle owner the opportunity to contest the imposition of the civil penalty in an administrative adjudication hearing. *See id.* §§ 707.009, .014.

The District informs us that the City of College Station (the "City") has implemented a photographic traffic signal enforcement system, also known as a red light camera system, and adopted a corresponding enforcement ordinance pursuant to chapter 707. *See* District Letter at 1; *see also* COLLEGE STATION, TEX., CODE OF ORDINANCES ch. 10, § 11 (2007) ("Automated Traffic Signal Enforcement"). Specifically, the City's Code of Ordinances provides that "the owner of a motor vehicle is liable for a civil penalty of seventy-five dollars ($75.00) if" that "motor vehicle is operated in violation of the instructions of [a] traffic-control signal." COLLEGE STATION, TEX., CODE OF ORDINANCES ch. 10, § 11(B)(1) (2007).

In the District's brief, the District presents a scenario in which a District employee, driving a District-owned vehicle, improperly proceeds through a red light monitored by the City's red light camera system.[3] The red light camera system captures an image of the vehicle improperly proceeding through the red light and, pursuant to chapter 707 and its ordinance, the City notifies the District of the violation and imposes a $75.00 civil penalty upon the District. *See* District Brief at 4; COLLEGE STATION, TEX., CODE OF ORDINANCES ch. 10, § 11(B)(1) (2007). The District argues that it may not pay the civil penalty due to the limitations found in article III, sections 51 and 52(a) of the Texas Constitution.[4] *See* District Brief at 2–4. We address whether, in the scenario above, those constitutional provisions prohibit the District from paying the civil penalty imposed by the City.

Article III, section 52(a) of the Texas Constitution prohibits the Legislature from authorizing any political subdivision of the state[5] "to lend its credit or to grant public money or thing of value in aid of, or to any individual, association or corporation." TEX. CONST. art. III, § 52(a). Similarly, article III, section 51 states that the "Legislature shall have no power to make any grant or authorize the making of any grant of public moneys to any individual, association of individuals, municipal

---

[3]Brief from Ms. Chris G. Elizalde at 4 (June 11, 2008) [hereinafter District Brief].

[4]The District specifically contends that its payment of the civil penalty to the City would unconstitutionally benefit the District employee who operated the motor vehicle because the employee was "solely responsible" for the violation. *See* District Brief at 2–4. While it is true in the scenario presented above that the District employee operated the motor vehicle in violation of the instructions of the traffic-control signal, the plain language of chapter 707 of the Texas Transportation Code and the City's Code of Ordinances provides that the owner of the motor vehicle is liable for the civil penalty. *See* TEX. TRANSP. CODE ANN. §§ 707.002, .013(a) (Vernon Supp. 2009); COLLEGE STATION, TEX., CODE OF ORDINANCES ch. 10, § 11(B)(1), (D) (2007). If the District, and not the employee in question, is liable for the civil penalty, then the District's payment of the penalty would not constitute a benefit to that employee.

[5]A school district is a political subdivision of the state. *See Wichita Falls State Hosp. v. Taylor*, 106 S.W.3d 692, 694 n.3 (Tex. 2003).

or other corporations whatsoever." *Id.* § 51. The purpose of these provisions is to prevent the gratuitous payment of public funds to any individual, corporation, or purpose whatsoever. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 740 (Tex. 1995). A "corporation" within these provisions includes a municipal corporation such as the City. *See San Antonio Indep. Sch. Dist. v. Bd. of Trs. of the San Antonio Elec. & Gas Sys.*, 204 S.W.2d 22, 25 (Tex. Civ. App.—El Paso 1947, writ ref'd n.r.e.) (deciding that a city could not lend or donate public funds to an independent school district, which was a separate municipal corporation).

We have found no case law or attorney general opinion specifically addressing the constitutionality of a governmental entity's payment of a civil penalty for which the entity is liable. However, existing cases and attorney general opinions addressing analogous payments by governmental entities are helpful in addressing that issue. For example, in *Harris County v. Dowlearn*, the court of appeals held that a governmental entity's payment of a valid claim under the Texas Tort Claims Act for which the governmental entity was liable would not violate article III, section 51 or 52. *Harris County v. Dowlearn*, 489 S.W.2d 140, 144 (Tex. Civ. App.—Houston [14th Dist.] 1972, writ ref'd n.r.e.); *see also Stacy v. Bridge City Indep. Sch. Dist.*, 357 S.W.2d 618, 618–20 (Tex. Civ. App.—Beaumont 1962, no writ) (concluding that a school district's payment of full salary to a wrongfully discharged employee does not violate article III, section 51). Similarly, this office has previously opined that article III, section 51 did not bar a state agency's payment of back wages to a person who successfully asserts a valid claim of employment discrimination against the agency. *See* Tex. Att'y Gen. Op. No. H-1186 (1978) at 4; *see also* Tex. Att'y Gen. Op. No. H-1288 (1978) at 2 (finding that article III, section 52(a) does not bar payment by a county of a valid contract claim for which the county is liable). These cases and opinions stand for the proposition that if a governmental entity is liable for an obligation, then the payment of that obligation is not an unconstitutional gift or grant under article III, sections 51 and 52(a). *See* Tex. Att'y Gen. Op. No. H-1186 (1978) at 4 ("Article [III], section 51 is not violated by the payment of a claim for which the state is liable."). Accordingly, we believe a court would likely find that a governmental entity's payment of a civil penalty for which the entity is liable would not violate article III, sections 51 and 52(a).

The plain language of chapter 707 of the Texas Transportation Code and the City's Code of Ordinances provides that the District, as the motor vehicle owner, is liable for the civil penalty imposed under those provisions. *See* TEX. TRANSP. CODE ANN. §§ 707.002, .013(a) (Vernon Supp. 2009); COLLEGE STATION, TEX., CODE OF ORDINANCES ch. 10, § 11(B)(1), (D) (2007). We presume that duly-enacted statutes and city ordinances, such as those at issue here, are constitutional and valid. *See* TEX. GOV'T CODE ANN. § 311.021 (Vernon 2005) ("In enacting a statute, it is presumed that: (1) compliance with the constitutions of this state and the United States is intended; . . ."); *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 629 (Tex. 1996) (presuming constitutionality of statute); *City of Brookside Village v. Comeau*, 633 S.W.2d 790, 792 (Tex. 1982) (presuming constitutionality of city ordinance). Therefore, unless the District establishes that it is not liable, its payment of the civil penalty will not contravene article III, sections 51 and 52(a). If the District does establish that it is not liable, however, article III, sections 51 and 52(a) may prohibit it from paying the penalty unless the payment accomplishes an authorized public

purpose of the District.[6] *See Tex. Mun. League Intergovernmental Risk Pool v. Tex. Workers' Comp. Comm'n*, 74 S.W.3d 377, 383–84 (Tex. 2002) (holding that a payment will not violate article III, section 52 if the use of the public funds accomplishes a public purpose, a clear benefit is received in return, and adequate public controls are in place to ensure that the public purpose is accomplished and the public's investment is protected), Tex. Att'y Gen. Op. No. GA-0076 (2003) at 3; *see also Barrington v. Cokinos*, 338 S.W.2d 133, 140 (Tex. 1960) (holding that the constitution does not invalidate an expenditure which incidentally benefits another party if the expenditure is made for the direct accomplishment of a legitimate public purpose). It would be for the District to determine in the first instance whether paying the civil penalty would serve a public purpose of the District. *See* Tex. Att'y Gen. Op. No. GA-0078 (2003) at 4 (citing *Young v. City of Houston*, 756 S.W.2d 813, 814 (Tex. App.—Houston [1st Dist.] 1988, writ denied), *City of Coleman v. Rhone*, 222 S.W.2d 646, 649 (Tex. Civ. App.—Eastland 1949, writ ref'd)).[7]

---

[6]In order for a payment to survive scrutiny, the public purpose served must be a legitimate public purpose of the District rather than the City. *See Bexar County Hosp. Dist. v. Crosby*, 327 S.W.2d 445, 447–48 (Tex. 1959); *State ex rel. Grimes County Taxpayers Ass'n v. Tex. Mun. Power Agency*, 565 S.W.2d 258, 265–66 (Tex. Civ. App.—Houston [1st Dist.] 1978, writ dism'd); Tex. Att'y Gen. Op. Nos. JC-432 (2001) at 2, JM-1255 (1990) at 3.

[7]The District indicates that other governmental units, including the City, have adopted policies requiring an employee of the governmental unit to reimburse the amount of a civil penalty imposed on the governmental unit under chapter 707 for the actions of that employee. *See* District Brief at 4. However, the District claims that there may be legal impediments to adopting such a policy. *See id.* at 4–5. We do not address such policies or any potential impediments to their implementation.

**S U M M A R Y**

          If the College Station Independent School District is liable for a civil penalty imposed upon it pursuant to chapter 707 of the Texas Transportation Code and the City of College Station's Code of Ordinances, its payment of the penalty would not contravene article III, sections 51 and 52(a) of the Texas Constitution. However, if the District is not liable for a civil penalty, payment of that penalty by the District may violate article III, sections 51 and 52(a), unless the payment accomplishes a public purpose of the District, with a clear public benefit received in return, and there are adequate public controls in place to ensure that the public purpose is accomplished.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

ANDREW WEBER
First Assistant Attorney General

JONATHAN K. FRELS
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Christy Drake-Adams
Assistant Attorney General, Opinion Committee